UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

VICTOR F.,

                        Plaintiff,

        v.

COMMISSIONER OF SOCIAL
SECURITY,

                        Defendant.

CASE NO. 2:25-CV-1770-DWC

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of Defendant's denial of his applications for supplemental security income ("SSI") and disability insurance benefits ("DIB").[1] After considering the administrative record ("AR"), the Court concludes the Administrative Law Judge ("ALJ") erred in failing to consider Plaintiff's left-sided neuropathy at Step Two of the Social Security evaluation process and in failing to properly consider whether Plaintiff's Chronic Pain Syndrome ("CPS") was a severe impairment at Step Two. Although the ALJ mentioned Plaintiff's left-sided neuropathy when assessing Plaintiff's

---

[1] Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 2.

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 1

subjective symptom testimony, the ALJ did not properly account for all evidence related to Plaintiff's left-sided neuropathy. Had the ALJ properly considered these impairments, Plaintiff's residual functional capacity ("RFC") or the ultimate disability determination may have changed. Accordingly, this error is not harmless, and this matter is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner of the Social Security Administration for further proceedings consistent with this order.

## I.      Procedural History

Plaintiff filed his applications for SSI and DIB on March 25, 2021, alleging disability beginning on April 1, 2020. AR 118–19. His claims were denied initially on June 2, 2022, and upon reconsideration on January 17, 2023. AR 118–19, 160–64. A hearing was held on May 23, 2024, and on August 13, 2024, ALJ Kathleen Kadlec ("the ALJ") issued a decision concluding that Plaintiff was not disabled. AR 14–48. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on August 13, 2025, making the ALJ's decision the Commissioner's final decision subject to judicial review. AR 1. From this decision, Plaintiff filed a complaint with this Court on September 16, 2025, seeking judicial review of the ALJ's decision. Dkt. 4.

## II.      Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citation omitted). "We review only the reasons

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 2

provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [they] did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

**III.    Discussion**

Plaintiff alleges the ALJ failed to properly consider: (1) all of his severe impairments at Step Two; (2) Plaintiff's subjective symptom testimony; and (3) Plaintiff's RFC; which resulted in (4) a Step Five finding not supported by substantial, competent evidence. Dkt. 13 at 1.

A.    Step Two Determination

First, Plaintiff argues the ALJ erred in her "determination of the 'severe' impairments at [S]tep [T]wo, because the ALJ failed to properly consider [Plaintiff]'s left-sided neuropathy affecting both the upper and lower left extremities, and Plaintiff's diagnosed Chronic Pain Syndrome." *Id.* at 3.

At Step Two of the Social Security evaluation process, an ALJ must determine "whether the claimant has a medically severe impairment or combination of impairments." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment is not severe if it does not "significantly limit" one's ability to conduct "basic work activities." 20 C.F.R. §§ 404.1522(a), 416.922(a). Basic work activities are defined as the "abilities and aptitudes necessary to do most jobs." *Id.* §§ 404.1522(b), 416.922(b). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work.'" *Smolen*, 80 F.3d at 1290 (quoting *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) (adopting Social Security Ruling (SSR) 85-28)). "[T]he [S]tep-[T]wo inquiry is a de minimis screening device to dispose of groundless claims." *Id.*

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 3

Here, at Step Two, the ALJ found that Plaintiff suffered from the severe impairments of "degenerative disc disease of the lumbar spine, right knee arthritis, post-traumatic stress disorder, anxiety, and depression." AR 19. The ALJ ultimately found that Plaintiff had the RFC to perform light work

> [e]xcept he can stand and walk for six hours in an eight-hour workday, frequently operate hand controls with the left hand. [Plaintiff] can occasionally climb ramps, stairs, ladders, ropes, and scaffolds; and occasionally stoop, kneel, crouch, and crawl. [Plaintiff] can frequently reach overhead and in all other directions with the left upper extremity, and frequently handle, finger, and feel with the left upper extremity. [Plaintiff] can occasionally work at unprotected heights, occasionally work with moving mechanical parts, occasionally operate a motor vehicle, have occasional exposure to extreme cold and extreme heat, and work in a moderate noise environment. [Plaintiff] is able to understand, remember, and carry out detailed but not complex tasks. [Plaintiff] is able to frequently interact with supervisors and occasionally interact with coworkers and the public.

AR 24.

     i.     *Left-Sided Neuropathy*

The ALJ did not explicitly address Plaintiff's left-sided neuropathy at Step Two, AR 19–20, but later in the decision found that Plaintiff "presented to [a doctor] on November 5, 2021, to re-establish care with complain[t]s of nerve damage on the left side of his body. He noted left-sided neuropathy, for which he was on Gabapentin, as well as worsening chronic knee pain, which [wa]s causing his lower leg to swell." AR 26. Plaintiff contends that, "despite [the ALJ's] awareness of [Plaintiff]'s allegations of 'nerve damage' and despite the fact that Plaintiff's medical records show he has been diagnosed with and treated for the left-sided neuropathy[,]" the "ALJ's failure to properly consider the record as a whole contributed to her error in overlooking or disregarding the left-sided neuropathy as being a medically determinable, severe impairment at [S]tep [T]wo." Dkt. 13 at 4–5 n. 1.

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 4

Indeed, medical records from June 23, 2021, note that Plaintiff's "Problem #2" was "[n]europathy of left lower extremity" and observed "decreased muscle mass on [Plaintiff's] lower left extremity compared to his right. He has tenderness at the popliteal fossa. He has flexion to about 120 degrees." AR 745, 747–48. A follow-up appointment in November 2021 observed that Plaintiff's "[l]eft calf muscles [we]re atrophied. Abnormal gait and loss of balance when depending on left leg alone to hold w[eight]." AR 799. Medical records from December 10, 2021, indicate that Plaintiff's "left leg, from knee down has 24hr/7 pain[,] sharp, stabbing pain at bottom of foot[;] states he has to sleep sitting up." AR 794. Those same records indicate that Plaintiff's "Problem #1" was "[l]eg pain, left" that the examining doctor suspected to be "multifactorial, and could be potentially neuropathic," and that Plaintiff also expressed "[p]ain in left arm . . . secondary to history of prior nerve injury in the setting of stabbing and surgery." AR 796.[2]

Again, "the [S]tep-[T]wo inquiry is a de minimis screening device to dispose of groundless claims[,]" and the ALJ "must give full consideration to all of the available evidence, medical *and other*, that reflects on the impairment and any attendant limitations of function." *Smolen*, 80 F.3d at 1285, 1290 (emphasis in original) (citation omitted). Indeed, "[t]he failure to consider evidence of a diagnosis and limitations [at Step Two] is error." *See Ronnie R. v. Comm'r of Soc. Sec.*, No. 2:23-CV-34-DWC, 2023 WL 5927146, at *4 (W.D. Wash. Sept. 12,

---

[2] Medical records dating back to November 2015 document Plaintiff suffering "[m]oderate to severe pain throughout the day, more in the evening and morning. Numbness in left last two fingers and the left medial hand" for which Plaintiff was prescribed pain medication. AR 985. In December 2015, Plaintiff was seen for left arm pain, and his ensuing examination observed decreased grip strength. AR 980. Plaintiff was prescribed a hand orthotic and referred to physical therapy for his left arm pain. AR 981. In April 2016, Plaintiff was, again, seen for left arm pain and "decreased sensation left c8 dermatome in forearm and small fingers" as well as decreased strength in his left fingers. AR 973. Medical records from 2017 demonstrate that Plaintiff took Gabapentin for his left leg and left arm pain. AR 935, 962. Medical records from April 2020, and again in December 2021, show that Plaintiff continued seeking treatment for left arm pain AR 759, 796.

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 5

2023) (quoting *Flores v. Shalala*, 49 F.3d 562, 570–71 (9th Cir. 1995) (citation and internal quotation marks omitted) (an ALJ "may not reject significant probative evidence without explanation")).

The ALJ erred by not giving full consideration to the evidence of Plaintiff's left-sided neuropathy. Medical records and symptoms reported by Plaintiff demonstrate functional limitations pertaining to Plaintiff's left knee, left arm, left hand, left foot, left calf, and left leg due to left-sided neuropathy, AR 747–48, 794, 796, 799, 819–20, and "[a]n impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work.'" *Smolen*, 80 F.3d at 1290 (citation omitted).

Thus, substantial evidence does not support the ALJ's Step Two determination that Plaintiff's left-sided neuropathy was not a severe impairment because the ALJ failed to discuss significant, probative evidence showing that Plaintiff's left-sided neuropathy may have been a severe impairment. Therefore, the ALJ erred when she failed to consider Plaintiff's left-sided neuropathy at Step Two.

    *ii.     Harmless Error Analysis*

Defendant argues that any error at Step Two was harmless because the ALJ "stated she considered 'all symptoms' and . . . agreed that Plaintiff required left arm limitations" limiting Plaintiff to "no more than frequent operation of controls and to no more than frequent reaching, handling, fingering, and feeling with the left arm." Dkt. 17 at 2–3.

"[H]armless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a). Generally, an error is harmless if it is not prejudicial to the claimant and is "inconsequential to

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 6

the ultimate nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see also Molina*, 674 F.3d at 1115. "If an ALJ fails to find a severe impairment at Step Two but accounts for any limitations resulting from the alleged impairment in assessing RFC, the Step Two error is harmless." *Ronnie R.*, 2023 WL 5927146, at *4 (citing *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007)).

Here, as Defendant identifies, the ALJ included "left arm limitations[,]" in Plaintiff's RFC, to "frequently reach overhead and in all other directions with the left upper extremity, and frequently handle, finger, and feel with the left upper extremity." Dkt. 17 at 1; AR 24. Although the ALJ included some functional limitations that may bear upon Plaintiff's left-sided neuropathy and its impact on Plaintiff's left arm, left hand,[3] and left shoulder, it is not clear whether the ALJ properly considered *all evidence* relating to Plaintiff's left-sided neuropathy when determining Plaintiff's RFC—particularly, evidence of functional limitations to Plaintiff's left knee, left calf, left foot, and left leg—when formulating Plaintiff's RFC. AR 24.

Indeed, the ALJ observed Plaintiff's "left leg was notable to muscle atrophy when compared to the right[,] [t]here was also trace edema along his sock line, which was notable on the left leg, but not the right. In addition, [Plaintiff's left] knee seemed to be slightly larger when compared to the right." AR 26. The ALJ also noted that Plaintiff "reported that he experiences

---

[3] Defendant contends that the ALJ "thoroughly evaluated PA-C Seabrook's medical opinion" that observed, on a scale of one to five, with five being normal, Plaintiff's hand grip, finger abduction, thumb opposition were "1"; wrist, extension and flexion were "1"; elbow extension and flexion were "1"; and shoulder "arm abduction" and "pronator drift" were also considered to be a "1", again, at the low end of the scale, AR 819–20, and found it to be "not persuasive[.]" AR 37–38. Upon review, it is not clear to the Court that the ALJ considered this evidence when evaluating PA-C Seabrook's medical opinion, because the ALJ, when addressing this opinion, noted "motor strength was normal throughout the upper extremities on the right, *although reduced on the left*" which *was* consistent with PA-C Seabrook's opinion. AR 38 (emphasis added). To the extent that the ALJ considered PA-C Seabrook's opinion of limitations regarding Plaintiff's *left hand* and incorporated them into the RFC, the RFC nonetheless does not clearly incorporate the additional evidence of Plaintiff's left-sided neuropathy and its impact on his left knee, left leg, left calf, and left foot, and the observed physical abnormalities associated with Plaintiff's left-sided neuropathy, including abnormal gait, muscle atrophy, and loss of balance. AR 799.

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 7

shooting pain in his nerves up and down his left leg and feet[,] [h]e also stated that his knee is swollen on the left side and there is some swelling in the left leg to the sock line[,]" and Plaintiff sought "to see a specialist to see if he would benefit from a leg brace or any other interventions to improve his function and pain." AR 26–27. Despite these findings, the ALJ found that Plaintiff's

> left leg strength was 4/5 in proximal and distal musculature, left muscles were atrophied, and his gait was abnormal with loss of balance when depending on the left leg alone to hold his weight. Nevertheless, [Plaintiff] was alert and cooperative, his mood and affect were normal, and his attention span and concentration were normal.

AR 27. The ALJ does not explain how Plaintiff being alert and cooperative, having normal mood and affect, and having normal concentration undermines the medical evidence of record, acknowledged by the ALJ, that demonstrates functional limitations to Plaintiff's left knee, left calf, left foot, and left leg, due to his neuropathy.

The ALJ does point to an April 11, 2022, physical disability evaluation of Plaintiff's "complaints of left leg pain from his knee down with edema[,] [where Plaintiff] also noted left foot pain[.]" *Id.* Nonetheless, pursuant to that evaluation, the ALJ also acknowledged that Plaintiff "had only mild difficulty and *displayed mild pain* getting on and off the examination table without assistance[,]" "[t]here was decreased grip strength in the left hand," "[u]pper extremity muscle bulk was [normal on the right] . . . although *reduced on the left*," and that "range of motion of the lower extremities was generally normal throughout, *other than* with left hip flexion and left knee flexion and extension." *Id.* (emphases added).

Despite these findings, the ALJ, again, did not provide for any functional limitations pertaining to Plaintiff's left-sided neuropathy and its impact on Plaintiff's left knee, left calf, left foot, and left leg in the RFC. AR 24. Because the ALJ did not articulate any consideration of

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 8

whether Plaintiff's left-sided neuropathy constituted a severe impairment at Step Two, the Court cannot determine whether she properly accounted for all evidence of these limitations in formulating Plaintiff's RFC. Accordingly, the Step Two error was harmful, and reversal is warranted.

        iii.     *Chronic Pain Syndrome*

The ALJ found that Plaintiff was "diagnosed with [CPS] on August 14, 2023[,] [h]owever, this was noted to be improved and this condition was considered above as to [Plaintiff]'s knee pain."[4] AR 20. The ALJ made no other findings regarding Plaintiff's CPS in the decision. AR 17–41.

Critically, "here, at the [S]tep [T]wo inquiry, is the requirement that the ALJ must consider the combined effect of all of the claimant's impairments on [their] ability to function, without regard to whether each alone was sufficiently severe" and is also "required to consider the claimant's subjective symptoms, such as pain or fatigue, in determining severity." *Smolen*, 80 F.3d at 1290. The Step Two determination "is a de minimis screening device to dispose of groundless claims." *Id.*

Here, Plaintiff asserts that "the ALJ did not properly consider the [CPS] diagnosed by Dr. Brunk and Dr. Worzella at [S]tep [T]wo of the disability evaluation, an impairment which was clearly related to Plaintiff's chronic back pain, the left arm neuropathic pain [Plaintiff] has experienced since [his] stabbing, and the left leg/knee pain he has experienced since the stabbing." Dkt. 13 at 9–10. As discussed above, medical records shows that Plaintiff experienced chronic pain in his left-side throughout the alleged disability period, AR 759, 794, 796, 935, 980,

---

[4] The pertinent finding regarding Plaintiff's "right knee" observed that Plaintiff "had joint effusion of the right knee . . . [h]owever, this was mild, and the right knee was without any erythema and only mild tenderness. [Plaintiff] was given an injection, which improved [Plaintiff]'s knee pain, and he was referred to physical therapy." AR 20.

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 9

985, 1075–76, 1192, and he was diagnosed with CPS by Dr. Worzella in 2021 and by Dr. Brunk in 2024. AR 796, 1066. These medical records and diagnoses demonstrate that Plaintiff's CPS was not limited to his "knee pain[,]" and particularly, his *right knee* pain—the knee pain *exclusively* addressed by the ALJ at her Step Two determination regarding Plaintiff's CPS, AR 20—but rather, pain in Plaintiff's *left* knee, left calf, left shoulder, left fingers, and left arm, as discussed above, as well as chronic back pain.[5] AR 759, 794, 796, 935, 980, 985.

In conclusion, the ALJ's findings are not supported by substantial evidence, because, in considering Plaintiff's CPS at Step Two, the ALJ failed to discuss any evidence of Plaintiff's CPS—*aside from* her brief analysis of right "knee pain." AR 20. This was error, because an ALJ may not "reject significant probative evidence without explanation[,]" *Flores*, 49 F.3d at 570–71, and an ALJ "must give full consideration to all of the available evidence, medical *and other*, that reflects on the impairment and any attendant limitations of function." *Smolen*, 80 F.3d at 1285 (emphasis in original) (citation omitted). "We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings[,]" *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003), and absent discussion of the aforementioned evidence of Plaintiff's CPS, the ALJ failed to meet this mark.

---

[5] As for Plaintiff's chronic back pain, the ALJ found that Plaintiff "acknowledged that his severe back pain with muscle spasms, for which he was on tizanidine 4 mg up to three times per day as needed, was stable at that time." AR 26. The ALJ also found that "Dr. Katherine R. Mayer noted that claimant is dealing with chronic pain in the back, but that is somewhat managed with medication." AR 27. To the contrary, medical evidence in the record demonstrates that Plaintiff has "chronic back pain with bulging discs" that was "[p]reviously assessed[,] [w]orsening over time." AR 1075–76. Indeed, medical records from 2022 indicate that Plaintiff was there to follow up "on chronic knee/back pain." AR 1192. Physical therapy records from 2023 show "[l]ow back pain[,]" AR 1184, and that Plaintiff "demonstrated poor tolerance to lumbar rotations and supine march due to back pain, lumbar STM and mobilizations were unsuccessful in relieving pain." AR 1187.

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 10

Here too, the error is not harmless. Had the ALJ properly considered this evidence of Plaintiff's CPS and its impact on his left knee, left calf, left shoulder, left fingers, left arm, and back, Plaintiff's RFC may have included additional limitations or the ultimate disability determination may have changed. For these reasons, the matter must be reversed and remanded. *See Stout*, 454 F.3d at 1055; *Molina*, 674 F.3d at 1115, *Ronnie R.*, 2023 WL 5927146, at *4.

B.  Remaining Issues:

Because the Court finds the ALJ erred at Step Two, the Court declines to address Plaintiff's remaining arguments regarding Plaintiff's subjective symptom testimony, Plaintiff's RFC, and the ALJ's Step Five determination, because, on remand, the ALJ must re-evaluate the entire Social Security sequential evaluation process. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) ("[A]n RFC that fails to take into account a claimant's limitations is defective."); *see also Sharee R. v. Berryhill*, No. 3:17-cv-06055-DWC, 2018 WL 4927620, at *6 (concluding that "it is unnecessary to address the other issues raised in [the] [p]laintiff's appeal" because "the ALJ's error at Step Two impacts all aspects of the ALJ's decision, [therefore] the ALJ is instructed to re-evaluate this entire matter on remand, completing each step of the sequential evaluation process.").

**IV.   Conclusion**

Based on the foregoing reasons and the relevant record, the Court **ORDERS** that this matter be **REVERSED** and **REMANDED** for further administrative proceedings, consistent with this order.

Dated this 23rd day of April, 2026.

David W. Christel
United States Magistrate Judge

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 11